NICHOLS LOAN CORPORATION OF TERRE HAUTE, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

NICHOLS LOAN CORPORATION OF BRAZIL, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

NICHOLS LOAN CORPORATION OF CLINTON, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

NICHOLS LOAN CORPORATION OF INDIANAPOLIS, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

NICHOLS LOAN CORPORATION OF CRAWFORDSVILLE, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

NICHOLS LOAN CORPORATION OF EAST CHICAGO, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

NICHOLS LOAN CORPORATION OF MICHIGAN CITY, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 14012–14018.

United States Court of Appeals Seventh Circuit.

Sept. 5, 1963.

Benjamin G. Cox, Terre Haute, Ind., Gambill, Cox, Zwerner, Gambill & Sullivan, Terre Haute, Ind., on brief, for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Thomas R. Manning, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Lee A. Jackson, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before DUFFY and KILEY, Circuit Judges, and PLATT, District Judge.

KILEY, Circuit Judge.

The Tax Court in a consolidated opinion determined deficiencies in income tax against the seven separate petitioners. They have appealed.[1]

Each petitioner[2] is an Indiana corporation licensed to engage in the small loan business in Indiana,[3] and each corporation succeeded to a small loan business previously conducted by a partnership. The stock of six of the corporations is owned equally by two brothers, John G. and George O. Nichols. Fifty percent of the stock in the remaining Clinton corporation is owned by their father, William, and twenty-five percent is owned by each brother. George Nichols is the president of six of the corporations, and William is the president of the Clinton business.

During the years in question, approximately ninety percent of the customers of the several Nichols' small loan businesses took out "credit insurance"[4] at the time they borrowed money. William and George Nichols, and several of their office managers, were duly appointed agents of Old Republic Life Insurance Company; all were licensed to sell insurance in Indiana. When the customers borrowed money, Nichols' employees filled out the insurance forms, deducted the premiums from the amount borrowed, and paid the net proceeds of the loan to the borrower. Each of the corporations kept the premium income separate from other funds and, periodically, forwarded it to George Nichols. He then paid the premiums, less commissions thereon, to Old Republic. There is no question here of the tax treatment of that commission income to George Nichols and other members of the Nichols family.

The Commissioner advised petitioners that, so far as pertinent here,[5] deductions claimed by them as business expenses in the credit insurance activity were disallowed. In their petition to the Tax Court, petitioners claimed that their "credit insurance" activity was beneficial to their small loan business, stabilized them in competition and justified the small expense they incurred in accommodating the Old Republic agents in their offices.

The Tax Court held that the small loan businesses could not deduct any expenses attributable to the credit insurance business.[6] The question is whether the Tax Court erred in its conclusion, on the undisputed evidence, that petitioner corporations were not entitled to deduct the credit insurance expenses as "ordinary and necessary expenses" of the small loan business, pursuant to § 162(a) of the Internal Revenue Code of 1954.[7]

1. Pursuant to 26 U.S.C. § 7482.

2. Nichols Loan Corporation of Terre Haute, Nichols Loan Corporation of Brazil, Nichols Loan Corporation of Clinton, Nichols Loan Corporation of Indianapolis, Nichols Loan Corporation of Crawfordsville, Nichols Loan Corporation of East Chicago, Nichols Loan Corporation of Michigan City.

3. Pursuant to Indiana Small Loans Act, Burns Indiana Stats.Anno.1963 Cum.Pkt. Supp. §§ 18–3002 and 18–3004.

4. In general, a credit insurance policy provides primarily for payment of the balance due on the loan to the lender in the event of the borrower's death, illness or accident.

5. The Tax Court rejected the Commissioner's principal contention that the commissions on credit insurance were taxable to petitioner corporations, and the Com- missioner did not appeal that ruling. The petitioner corporations did not appeal the Tax Court's ruling against it relating to tax treatment of bad debt reserves.

6. The effect of this holding was that a portion of the general overhead expense of the petitioner corporations was disallowed. In the absence of any "accounting cost records which would provide a basis for the break down," the Tax Court estimated the amount of deductions to be disallowed, citing Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). The estimate was fifty percent of gross commissions which Old Republic allowed to George Nichols.

7. 26 U.S.C. § 162(a) provides, in pertinent part, as follows: "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

It is not disputed that under Indiana law petitioners could not themselves be insurance agents [8] and were prohibited from receiving from borrowers any other charge in addition to the rate of interest and charges authorized under the Small Loans Act of Indiana.[9]

The testimony is uncontroverted that petitioners' competitors in this highly competitive field furnished credit insurance to customers. There is testimony, too, to the effect that the petitioners' officers made a business judgment that it was beneficial for petitioners to offer these facilities free of charge to the insurance business in order reasonably to meet competition.

The Tax Court found on the testimony that "the availability of credit insurance for customers was advantageous to the petitioner corporations," being convenient for the customers to have "one-stop" service for borrowing and for insurance which customers expected to have available, and also advantageous in reducing petitioners' risks of bad debt losses. These findings are not challenged.

There was also evidence that the actual cost of sales of credit insurance was insignificant, that most of the customers wanted and asked for credit insurance, and that the clerical work involved amounted to very little.[10]

We think that the undisputed testimony and findings support petitioners' arguments that the cost of providing credit insurance was insignificant, that customers wanted credit insurance and competition demanded it, and, therefore, that the business judgment in making credit insurance available was sound.

■ There are separate taxable entities involved here: the petitioner corporations, and the individual members of the Nichols family receiving insurance commissions. It is irrelevant that there is a common interest because the separate entities may lawfully resort to any available legal methods to diminish their tax liabilities, and that without regard to ownership. Jones v. Helvering, 63 App.D.C. 204, 71 F.2d 214, 217 (D.C. Cir.1934).

This court "should be slow to override" the business judgment of petitioners that lending their facilities to the credit insurance business was beneficial. Welch v. Helvering, 290 U.S. 111, 113, 54 S.Ct. 8, 78 L.Ed. 212 (1933). Because of the Tax Court's finding that credit insurance availability was beneficial to the small loan business, the evidence that competitors had the expense of credit insurance, and because of the particular restrictions of Indiana law, we conclude that petitioners' credit insurance expenses were "ordinary" on the facts of this case. We call attention to the words of Mr. Justice Cardozo, for the Court, in Welch v. Helvering, supra, 290 U.S. at 113–114, 54 S.Ct. at 8–9, 78 L.Ed. 212: " * * * what is ordinary, though there must always be a strain of constancy within it, is none the less a variable affected by time and place and circumstance."

■ On the evidence that customers wanted credit insurance, that it materially reduced bad debt risks, and that its availability was essential to meet competition, we conclude that credit insurance was a "necessary" expense of the small loan business under these circumstances.[11]

8. The Tax Court specifically *found* that a "corporation organized under the Indiana General Corporation Act is forbidden to engage in the insurance business," citing Burns' Indiana Stats.Anno., § 25–201, and that life insurance agents are required to be "natural persons," citing § 39–4601.

9. Burns' Indiana Stats.Anno. 1963 Cum. Pkt.Supp. §§ 18–3002 and 18–3004.

10. The Tax Court found that the clerical work for insurance involved filling out a "certificate form which showed the insurance coverage to be provided." The testimony was that "the girl types four or five words * * *."

11. "There has been a great deal of litigation over the question of what are ordinary and necessary business expenses but

**908**

For the reasons given, we hold the Tax Court erred in concluding that expenses attributable to credit insurance were not deductible by petitioner corporations. We do not reach the other points raised. The judgment is reversed.

DUFFY, Circuit Judge (dissenting).

I respectfully dissent. Taxpayer-corporations were engaged in the small loan business. Under Indiana law, these corporations were prohibited from acting as insurance agents. The business of credit insurance was admittedly not the business of the taxpayer-corporations. None of the insurance premiums, gross or net, were ever entered on the books of account of any taxpayer-corporation. No amount was paid to any of the taxpayer-corporations during the taxable years either as rent or as reimbursement for office expenses and services, with respect to the writing of insurance in their offices.

Title 26 U.S.C. § 162(a) provides for a deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." But the credit insurance business is not conducted completely without expense. In my view, taxpayer-corporations cannot properly claim deductions for subsidizing the business of another. The finding of the Tax Court as to disallowable expenses is not clearly erroneous.

The Tax Court held that a portion of the general overhead expenses of each taxpayer-corporation was attributable to the handling of the insurance business and was therefore not attributable to the carrying on of the small loan business. This was certainly a correct conclusion.

As the taxpayers had not produced any accounting cost records from which a more accurate determination could be made, the Tax Court was forced to rely on the Cohan rule. Cohan v. Commission-

er of Internal Revenue, 2 Cir., 39 F.2d 540, 544. That is, to "make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making."

In my view, the Tax Court adopted a very reasonable formula. It decided that 50% of the gross commissions of the insurance business should be deducted. In my view, this was reasonable. I would affirm the Tax Court.

no general rules can be laid down, since what is ordinary and necessary depends on the type of business of the taxpayer and the business customers at the time

and in the locality where the taxpayer is operating." Stanley & Kilcullen, Federal Income Tax 62 (4th ed. 1961).